The Corporation of Bluffton *et al.* v. Studabaker *et al.*

No. 8621.

\

THE CORPORATION OF BLUFFTON ET AL. v. STUDABAKER

ET AL.

|106 129|
|130 155|

|108 129|
|160 43|

|106 129|
|164 120·|

TOWN.—*Power to Purchase Fire Engines.*—*Amendment of Charter.*—A town, incorporated by a special act of the Legislature, prior to the Constitution of 1851, had power under its charter to purchase fire engines, but upon amendment of the charter by the Legislature of 1873, such power was omitted.

*Held*, that, notwithstanding such omission, the town possesses inherent power to purchase such engines for the protection of the property of its citizens from fire.

From the Wells Circuit Court.

*J. S. Dailey* and *L. Mock*, for appellants.

*R. S. Taylor*, for appellees.

HOWK, J.—In this case, each of the appellants demurred to the complaint of the appellees, the plaintiffs below, upon the ground that it did not state facts sufficient to constitute a cause of action. These demurrers were overruled by the court, and to this ruling the appellants excepted, and, having refused to plead further, it was adjudged and decreed by the court that they be perpetually enjoined, as prayed for in appellees' complaint.

In this court, the only errors assigned by appellants are such as call in question the sufficiency of the facts stated in appellees' complaint to constitute a cause of action.

The suit was commenced on the 6th day of February, 1880. In their complaint, appellees, John Studabaker, George Arnold, Benjamin F. Wiley and Henry O. Arnold, alleged that they, each and all, were citizens and taxpayers of the corporation of Bluffton, in Wells county, in this State, and largely interested in its welfare and prosperity; that such corporation of Bluffton was a municipal corporation, created under a special act of the Legislature of this State, approved February 12th, 1851, as amended by an act of the Legislature of this State, approved February 15th, 1873, as

found on page 31, *et seq.*, of the acts of 1873; that appellant Smith was the mayor, and appellants Thoma, Tribolet, Shelly and Deam were the councilmen, and appellant Miller was the clerk, and appellant Sturgis was the treasurer of such corporation of Bluffton; that such corporation by its council had ordered from the Consolidated Fire Extinguisher Company, of Pittsburgh, Pa., and Chicago, Ill., and were about to purchase, two chemical engine fire extinguishers for the use of such corporation, without any authority or warrant in law; that by such unlawful act of the council of the corporation of Bluffton, the taxpayers thereof were about to be involved in great expense, to wit, in the sum of $1,600, that being the alleged price of such chemical engine fire extinguishers; that the corporation of Bluffton had no authority, under its charter as amended, to purchase such an article for its use; and that the corporation, by its council and other officers, were about to issue orders, warrants or bonds, in payment for such chemical engine fire extinguishers, unless they were at once restrained and enjoined from such unlawful proceeding.    Wherefore, etc.

The town of Bluffton, in Wells county, was incorporated by and under a special act of the General Assembly of this State.    The act is entitled, "An act to incorporate the town of Bluffton, in Wells county, Indiana," was approved on the 12th day of February, 1851, and, by its express terms, was "in force from and after its passage."    The act contained fifteen sections.    In section 1, it was enacted that the inhabitants of certain described territory, in Wells county, and of all other additions to the town of Bluffton, after a proper plat of the same had been recorded in the recorder's office, "are hereby created a body corporate and politic, by the name and style (for corporation purposes) of the 'Corporation of Bluffton,' and by that name shall be capable of suing and being sued, contracting and being contracted with, pleading and being impleaded, answering and being answered unto, in all courts and places, either in law or equity, and in

all places whatsoever." In section 8 of such act, it was pro-
vided as follows: "The council of the corporation of Bluff-
ton shall have power to sink wells for the accommodation of
the public, to purchase fire engines, and to erect a scale or
scales, (if necessary) to determine the weight of hay, etc.; to
prevent the erection of nuisances, and remove the same; to
regulate and govern the markets, and generally to enforce by
penalties, the observance of all laws and ordinances relative
to police, health, accommodation and government of said
incorporated town."

Nearly nine months after the town of Bluffton was so in-
corporated under such special act or charter, to wit, on the
1st day of November, 1851, the Constitution of this State,
of 1851, took effect and became, and, with some amendments
not material to the questions in this case, has since continued
to be, the organic or fundamental law of this State. Under
this Constitution, and since it took effect as aforesaid, the
General Assembly has had no power or authority to enact
such a law as the above entitled act for the incorporation of
the town of Bluffton. For, in section 13, of article 11, of
the State Constitution of 1851, it is expressly declared that
"Corporations, other than banking, shall not be created by
special act, but may be formed under general laws."

But, in the *fourth* clause of the schedule or ordinance,
which is embraced in and forms a part of the State Consti-
tution of 1851, it is ordained as follows: "All acts of in-
corporation for municipal purposes shall continue in force
under this Constitution until such time as the General As-
sembly shall, in its discretion, modify or repeal the same."
Under this clause of the Constitution of 1851, the above
entitled act for the incorporation of the town of Bluffton,
just as it was enacted, was certainly continued in full force
after such Constitution took effect as aforesaid. In and by
such clause of such Constitution, full and express power and
authority were conferred upon the General Assembly to
either "modify or repeal" all such acts of incorporation, for

municipal purposes, as were in force at the taking effect of such Constitution.

Assuming to act under the power and authority thus conferred, as we may well suppose, the General Assembly enacted the act amending the act of February 12th, 1851, incorporating the town of Bluffton, referred to in appellees' complaint. This amendatory act was approved on the 15th day of February, 1873, and, by its title and terms, purported to amend the first thirteen sections of the original act. The constitutionality and validity of this amendatory act is in no manner called in question in the case in hand, and, therefore, this question will not be considered. The original section 8, heretofore copied in this opinion, was and is amended by adding thereto a number of new provisions, and by omitting the express power " to purchase fire engines." This omitted power is now nowhere expressed in the charter of the corporation of Bluffton, as amended. It is contended on behalf of the appellees, that this omission of the express power to purchase fire engines, from the charter as amended, shows an " unmistakable intention," on the part of the Legislature, " to deny the corporation of Bluffton the power to purchase a fire engine." Appellees' counsel says : " The power to purchase a fire engine having been once expressly given and then as expressly taken away, does not now exist in the corporation of Bluffton."

This is hardly a correct statement, as it seems to us, of what is shown in the original charter of the corporation of Bluffton, and in the amended sections of such charter, in relation to the power of the corporation to purchase a fire engine. It is true, no doubt, that such power was expressly given in the original section 8 of· the original charter, but we have failed to find that such power was expressly taken away, either by section 8 as amended, or by any other amended section. The most that can be correctly said on this point is that by the omission of such express power from section 8 as amended, the original section 8 was that far forth impliedly repealed by

such amended section. A repeal by implication of a power previously granted can hardly be called an express taking away of such power; although the effect of such implied repeal would virtually be the same as if the power had been expressly taken away, in any case where the express grant is necessary to the existence of the power.

The power to purchase fire engines by an incorporated city or town does not, however, of necessity, depend upon the question whether the charter of such city or town has, or has not, expressly granted such power. In 1 Dillon Munic. Corp. (3d ed.), p. 171, section 143, the learned author says : " The prevention of damage by fire is usually an object within the scope of municipal authority, either by express grant or by the power, in a chartered town or city, to make police regulations or needful by-laws, and for this purpose it may regulate the mode and removal of ashes. And where the town or municipal body has such power, it is authorized to appropriate money for the purchase of engines, or for the repair thereof, if to be used for the purpose of extinguishing fires therein; and this, whether they belong to the corporation or were purchased by private subscription." So, in *Clark* v. *City of South Bend,* 85 Ind. 276 (44 Am. R. 13), the court said : "A municipal corporation has such powers as are expressly granted, and also such implied or incidental ones as are necessary to carry into effect the express powers and effectuate the object of the corporate existence. It was long ago declared that the power to prevent danger from fire is an incidental one, belonging to all municipal corporations." So, also, in *Baumgartner* v. *Hasty,* 100 Ind. 575 (50 Am. R. 830), the court said : " The rule has always been that a municipal corporation has the inherent power to enact ordinances for the protection of the property of its citizens against fire. * * * The exercise of such a power is not the exercise of a new power, nor of one not connected with the purposes for which public corporations are organized ; on the contrary, it is the exercise of a power long possessed by mu-

nicipal corporations and closely connected with the purposes for which such corporations are organized."

We conclude, therefore, in the case under consideration, that, notwithstanding the omission of the power " to purchase fire engines" from the amended charter of the town of Bluffton, such inherent power to purchase such engines, for the protection of the property of its citizens from injury or destruction by fire, did and does now exist in the corporation of Bluffton.

In the conclusion of his argument appellees' counsel further says : " If any such power to purchase a fire engine could be based on implication, it must conform to and rest on usage, and would not extend to the purchase of novel and experimental machines, such as are described in the complaint." In answer to this position of counsel it will suffice to say that, in their complaint, the appellees rested their claim to the equitable relief prayed for, upon the single ground that the appellants had ordered, and were about to purchase, the fire extinguishers, "without any authority or warrant in law." They did not allege that the fire extinguishers were such as were not in general use, or were incapable from any cause of affording ample protection to the property of citizens of Bluffton from loss or damage by fire; nor did they allege that such fire extinguishers were " novel and experimental machines," or that they were worth any less than the alleged contract price, or that appellants did not have the money in hand to pay for the machines on delivery, or that there was any fraud whatever in the transaction. In this state of the record it is absolutely certain, we think, that the last position of appellees' counsel is wholly untenable, and can not be sustained.

We are of opinion, therefore, that appellees' complaint herein does not state facts sufficient to constitute a cause of action, and that appellants' demurrer thereto ought to have been sustained.

The judgment is reversed, with costs, and the cause is re-

manded, with instructions to sustain the demurrer to the complaint, and for further proceedings not inconsistent with this opinion.

Filed April 1, 1886.